Stage November 18 Savings Income Bill 18. Accessination Archives and Revision Service Association of more than 800 South Indian Cultures, with staffed with the authorities. I'll call whenever you're ready. Good morning. May it please the Court. My name is Daniel Alcorn. I'm here for the Appellant to the Assassination Archives and Research Center. I'm joined at council table by James H. Lazar, my co-counsel. Mr. Lazar is under doctor's orders to limit his activities, so we are particularly pleased that he's able to attend and join us today. The issue before the Court are claims by the CIA to exempt records under the B-5 exemption. There are five records in particular they're exempting, and these five records relate to the search activities that were conducted when the CIA received and began to search for our requests. We contend that these are factual materials. These, in fact, are at the heart of any FOIA case the adequacy of search issue, and by the nature of the fact of what the request was shows that they are related to the search activities that the CIA conducted. I think the best way to see our concern is to look at one of the documents, which is at page 300 of the Joint Appendix. By looking at it, we can see what was released, what was not released. It's page 300 of the Joint Appendix. At the top is a big empty box. Yes, and I would point out that the size of the type is actually very small in the rest of the documents. The type size is the same. That's a considerable amount of information that could fit on that block at that small type size. In applying Exemption 5, is it ever dependent upon gross quantity of material that gets exempted? No, it's the nature of the material. And, of course, exemptions must be narrowly construed. As part of the case law, the Supreme Court has stated that again in the Milner case. So these exemptions are not to get broad application. And the concern originally with the B-5 exemption was it not be used to withhold factual type information. And if you look at this document, it's a task information, which I think means a task order, something to be done. The instructions are, please conduct a search for records on or pertaining to communications by Allen Dulles regarding plots to assassinate Adolf Hitler. Well, that caused quite a reply, assuming we're right about the type size and the amount of the whiteout. There's more to that than we don't have any records, which is the ultimate response that we were given. And, in fact, so your position is that the box expands depending on what's typed into it. And then it also says page one of two, or is it? Yes, there is a second page and there's actually the remainder of the sentence on the second page, the next page, which either was deliberately not whited out or it could have been a mistake that it wasn't whited out. It seems to continue over on the next page, 300 to 301. Any relevant material, please feel free to contact me if you have any questions. It looks to me more like a mistake that it got forgotten because it went over to the other side. But it's not particularly helpful to what we're trying to do. Mr. Alcorn, so why, though, isn't this something like the summary of a record evidence, which we've said we can, you know, in Montrose, we said would be the same as probing the decision making process? I think we're left, we don't really know what is behind the redactions as part of our problem in contesting them. But given the context of this information, the tasking order with instructions to make a search, the response, it's logical to then believe that there's information here about the search and that indicates whether records existed or did not exist. And so we're taking what the context of this document is, which the CIA has provided to us. They also provided it in response to a request asking for information from the search activity. So they've already made a decision that this is relevant to the search. In addition, their Vaughn Index, which is on page 219 of the Joint Appendix, the Vaughn Index for this document, and they're essentially identical for the other documents, state internal agency search information in response to plaintiff's FOIA request. That's the beginning of the description in the Vaughn Index to justify the withholding. And we would contend that information, the B-5 exemption, the pre-decisional deliberative process privilege is designed for policy and legal discussions. And I don't see where this information is of a policy or legal nature. There's really no mention of that. It's a tasking order to make a search and report back to us the results of your search. And there are five documents that with that category that are part of the withholding. I'm concerned that this information may relate because of the subject matter, Alan Dulles and the plots to assassinate Hitler. It may relate to the issue of the OSS records, which was the predecessor organization of the CIA. And there's an issue, the CIA has on a number of occasions referred us to the National Archives, but you have to go to the National Archives to get any information. And that has to do with a process by which the CIA kept the OSS records and then because of the Nazi War Crimes Disclosure Act of 1998, they eventually had to transfer a lot of those records to the government. And then did they keep copies? Because if the agency kept a copy, the Morley case in 2007, the 2007 Morley case said that if the CIA has copies, then they must account for those under FOIA because they're records in possession of the agency. And that issue about whether there were copies maintained of these records is not addressed anywhere in the case by the submissions of the government. They just don't mention the issue of the copies. And it concerns me that this whiteout may involve that issue. Of course, we don't know because we don't have the information, but it may involve a discussion of whether to account for these copies. So, we are asking for in-camera review of the withheld material. We think the issue is such and the circumstances such that in-camera review would be appropriate in this case. And that would involve remand to the district court to do that? We would encourage this court to do it if this court is so inclined or it could be done on a remand. Do we have authority to do that? It's in the statute. The FOIA statute provides for in-camera review. The standard of review of this court is de novo review. And this court undertakes a de novo review under the requirements of the FOIA and the statute and applies the law. So, I would contend that under the de novo review, the in-camera review is a possibility. Do we review the district court's denial of in-camera review under a de novo standard or under an abusive discretion standard? I would say it's de novo. The merits of the FOIA request is a de novo review. But the denial of in-camera review is also de novo? Is there a case for that? I would, the Summers case sets the standard of de novo review. Not every issue, we know the attorney's fee issue is not, it's on an abusive discretion. But the merits of the FOIA case and the in-camera review doesn't involve the merits of the FOIA case. Because it's reviewing the material to see whether the exemption should apply. So, Mr. Alcorn, you're not making any argument here that the deliberative process privilege applies differently or is inapplicable to the deliberations in complying with FOIA itself? No, no. We're going back to the EPA versus Mink, the case law for the B-5 exemption, which is to construe it narrowly and avoid factual matters that could be separated out because of the concern that factual matters could then be slipped under a deliberative process privilege. So that is our contention. Thank you. And I reserve two minutes for rebuttal. Morning, Mr. Hammond. Good morning, Your Honors. May it please the Court, my name is Derek Hammond and I'm here today on behalf of the FLE, the Central Intelligence Agency. The issue here is a narrow one. It is whether the District Court correctly concluded that the material contained in five tasking documents qualified for the deliberative process privilege and whether that material was properly withheld under Exemption 5 of the FOIA. In making that determination, the Court had before it two CIA declarations, a Vaughn Index, and five redacted versions of the documents themselves. Taken together, these materials clearly demonstrate that the material was both pre-decisional and deliberative and therefore qualified for the privilege. The material was pre-decisional because it was prepared by an agency employee for the purpose of assisting the agency in responding to the appellant's FOIA requests and it did so prior to the final disposition of those requests. The material, likewise, is deliberative. Indeed, the documents themselves call for an internal give and take among agency personnel and they call for, as appellant pointed out, there were instructions and that prompted a response. And as the declarations indicate, we know what's behind the response. It's internal agency discussion regarding the searches conducted. And as the declaration... Is that deliberative or is that more ministerial? I'm having, I'm actually having trouble even hypothetically imagining what could be in this box that is deliberative. If somebody said, well, wait a minute, we don't even have this, would they, would they write that? If they said, actually, legally, we don't think we have to turn it over, would they write that in the box? It's not lawyers sort of talking about the scope. It's somebody who's in charge of a file who's being asked to look through it and they're going to say, I looked, I did find something, I didn't find something. I'm just having trouble with the deliberation characterization even hypothetically. I wonder if you could help me out with that. Sure. Absolutely. So first of all, I would note that the agency employee is exercising some amount of judgment and discretion in actually conducting the search. The agency has received a FOIA request that broadly seeks various kinds of documents, a class of documents. And now an agency employee is being asked to exercise judgment in determining where those materials might be located in the vast array of documents that any agency may have. It then calls for a response. And in your hypothetical, it could be, I don't, I conducted this search and it yielded these results. But as this court has noted in Mead data, the purpose of the privilege is to protect the deliberative process itself and not merely documents that contain deliberative material. So as this court held in Mead data, discussions among agency personnel that formed the raw materials by which the agency employee was the agency goes about making its decision, even if that, even if that discussion may be characterized as factual in nature, still qualifies as deliberative material. And in this case, the agency employee exercises judgment to perform a search. And then in your hypothetical, he reported what the search was and how he did it. And that then goes to an agent, to the deciding official at the agency as to whether or not that qualifies as a, as a adequate search for the FOIA request. The deciding official could very well say that's not adequate. We need additional information. We should conduct additional inquiries. Or we should do additional search terms. So, and as is made clear throughout in the Vaughan Index and in the various declarations, this was not a final determination about the search that was conducted. And so for that reason, because this is essentially the employee's response is tantamount to a recommendation to the deciding official as to what an appropriate response or appropriate search in a given FOIA, in the context of any given FOIA request would be. It seemed to me in that answer, you embodied in the thought process that's reflected in the factual findings. But did I get that right? In a sense, I could see how that would almost be inevitable. So to the extent that there is factual material, it is part and parcel of the recommendation made by the employee as to what is it. Is it non-separable? Yes, Your Honor. Because it's, that is still material that the deciding official has to consider as part of his overall deliberations as to whether or not it's an adequate search. So if an employee says, I conducted this search and it yielded these results, the results, as well as the means and methods by which the employee went to go search, are all part of the raw materials that the agency is considering when determining whether the search it conducted was adequate or inadequate or whether additional searches may need to be conducted. So the difficulty, I think, is it's the government's burden to establish that the exemption applies. And plenty of our cases have said that cannot be done with a boilerplate recitation. Now, here what we have, as you mentioned, is a bond index and two declarations and the redacted documents themselves, which as far as I can tell, and I'm really not, you know, boilerplate, the bond index, pre-decisional intra-agency deliberations regarding the search results, not the agency's final determination. That is a restatement of what the test is, right, under the exemption. And then in the affidavits, disclosure of any of these documents would reveal the internal decision-making process the agency employs in making its final determinations. That, too, seems to me like a statement of what, a generic statement or, you know, boilerplate statement of what the exemption covers. So as reviewing court with empty boxes and that, is it something about the context that is supposed to further inform our judgment? I'm just not sure what you're asking us to apply our judgment to. Yes, so I think the forms themselves demonstrate that there is a give-and-take among the agency personnel, and the declarations indicate that what's in the black, what's in the box is a discussion of the searches conducted. That's not boilerplate. That's a description of what's in the box. It's a discussion of the searches conducted. And given that the context in which the agency is tasking an employee to conduct a search, and that employee is reporting up, and we know that that employee is not the deciding official, that's a discussion that is part of the deliberative process of the agency as a whole in making its determination as to adequacy of the search. What's your position on whether this court has authority to look in camera at the unredacted versions, or unredacted insofar as the exemption, deliberative process exemption is concerned? I believe that any court could conduct in-camera review, but I think it would be highly unusual for this court to conduct in-camera review if the lower court did not, and has not found that the lower court abused its discretion in declining to conduct such review. Although there's, I mean, another side of it is I often don't want to conduct in-camera review. I don't want to see things that I don't have to see. And so to force a judge who's not inclined to do something when we might be willing to take that responsibility is, I don't know, that's the counter-argument, I guess. Is that forcing, well, I mean, it is a discretionary standard. The judge below had discretion to decide whether or not he wanted to view the documents in camera, and he decided not to. It's only problematic if that discretion was abused. Now, does that mean that we can't unless we find he abused his discretion, or do we, in our de novo review, have a de novo authority to do our own in-camera review if that, if we think that would aid our? I believe this Court could conduct in-camera review if it deemed it necessary in its own discretion. And we wouldn't have to find that the district court abused his discretion. I think it would be unusual for the court to do that. I hear you. So the agency has produced everything it has. It's said what search terms it used. I think one of the concerns for the requesters is, and that makes it harder for them to just accept at face value the five forms, is the back and forth and how hard it was for them to get this information. They requested it. They got a final determination saying, no, we've got nothing. Then they, I believe they appealed, and they got a determination, again, we have nothing. And then, actually, I probably have this wrong, but you know what I'm referring to, that there, then there was, oh, no, actually, that was sent to you in error. We are looking. And then, no, actually, we were right the first time. We've got nothing. And then they file suit and move for summary judgment. And the Justice Department says, wow, why are you so pushy? You haven't even called us and asked whether we are still processing. And their position, I think, is it's been quite a while, and you've already told us you've got nothing. Do you mean you're still processing? So I think there's some concern on the requester's part with whether the search was done in full compliance with the agency's obligations. And so they're concerned that that might be reflected in these documents. Well, Your Honor, the adequacy of the search was decided below, and it's been summarily affirmed by this Court that the search was adequate. So regardless of their concerns, that does not inform the decision about how we go about evaluating delimitative process privilege. The purpose for which — But Your Honor, I dispute that if something were disclosed as a result of this lingering issue, that that might be subject to reconsideration, the adequacy. The search is not a closed book if it were shown that there were reasons to think it wasn't adequate. Right, but that would be talking about the completed search. What we're talking about here are documents that reflect an interim step in conducting that completed search. And these documents do not purport to encompass the entirety of the search that the agency completed in regards to these FOIA requests. The last one would, no? Not necessarily, Your Honor. I mean, there could be discussions outside of these tasking forms that were conducted that were not recorded and subject to the FOIA. Indeed, we know that they consulted with the CIA's chief historian about where documents might be. And so, you know, while the appellant may have concerns about the search, this Court has decided it. And these documents are unlikely to shed any light on that. And in any regard, this Court has held, and the Supreme Court has suggested, that the purpose for which a requester seeks documents is irrelevant in determining the applicability of any given FOIA exemption. If the Court has no further questions, the agency would request this Court to affirm. Let me just ask you this. To your view, there's no segregable information. I think you might have said this in response to Judge Williams' question. Everything is inextricably intertwined with information such that if factual information were revealed, it would impermissibly expose the agency's deliberative process. Right. And just because, and that goes to, I mean, this is material that was provided to the agency decision-maker, and that agency decision-maker had to consider in determining whether or not a given search was adequate or not. And that would, so providing any of the detail that was sent to that decision-maker would necessarily invade the deliberative process here. You seem to be coming close to arguing that if something is in a pre-decisional document, it's, if so facto, not segregable. I don't mean to suggest that, Your Honor. I mean to suggest only that the raw material, discussion that forms the raw material by which an agency makes a decision qualifies for the privilege. And that was held in Mead, in Mead data. And these, and I would also like to emphasize before I yield the rest of my time, that this Court found nearly identical types of documents subject to the privilege in Whitaker and found that those documents were properly withheld under exemption. Even there, though, we had a little more to go on in terms of the declaration. And what I'm curious about is why more description couldn't have been provided, because if we're making a decision that's going to be a precedent and it approves this level of rationale, of explanation, it's really unclear what, how we have subtraction to do review in any case, other than just say you've mentioned the privilege and it's in a, something that makes sense that it was prior to a decision. And it just, it's not what I read the precedents to approve. Pretty, they're pretty rigorous about not casting an invisibility cloak over the entire process. Understood, Your Honor. I would just submit that taken together, all of the documents, the records themselves, in redacted form, the context in which they were requested, the bond index, and the declaration submitted by the agency, taken together, they satisfy the burden under exemption. Thank you, Your Honor. Our concern is that the five documents that are withheld have a considerable amount of material in them, and we were told in that administrative process that there were no records that were located. Our responses that we did get were no records responses. We did have this back and forth where they withdrew one of their responses and said it was, one of the affidavits, the declarations in the records says it was an administrative error, and we've sought explanation of what was the administrative error and we've gotten really no substantive explanation. So the concern is that the amount of withheld information does not seem to comport with a no records response, and that there must be something else going on. Mr. Alcorn, does that argument go to the adequacy of the search, which is a question that's foreclosed by our earlier summary affirmance? Well, it potentially does, but the government, even in their briefs, says that if there's new evidence, new evidence is a reason to reopen a prior decision in the same case under law of the case. So it's not foreclosed forever, and we would contend that if new information comes out as a result of these redactions that indicates that the search was not adequate, that we would pursue that matter as a matter of new evidence affecting the prior decision. Thank you. The case is submitted, and I just wanted to note that the court appreciates that Mr. Lazar, despite serious health implications, was able to be in court today.
judges: Pillard, Rao, Williams